IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br>  v.<br><br>MINHO THOMAS CHO, et al.,<br><br>      Defendants.<br>_____/ | No. C 05-0375 SI<br><br>**ORDER DENYING DEFENDANT CHO'S MOTION TO SUPPRESS** |

On October 27, 2006, the Court heard oral argument on defendant Cho's motion to suppress. Cho challenges (1) the search of commercial properties at 335 Jones Street and 1922 Lawton Avenue in San Francisco, both of which were supported by the same affidavit; and (2) the search of his residence at 2218 Lenox Place in Santa Clara as the "fruit of the poisonous tree" from the commercial property searches. In response to the Court's questioning at the hearing, the parties submitted supplemental papers regarding the administrative search warrant served on PG&E to obtain the subscriber information and billing records for 335 Jones Street. For the reasons set forth below, the Court DENIES defendant's motion to suppress.

**BACKGROUND**

A California state search warrant for 335 Jones Street and 1922 Lawton Avenue was issued on August 5, 2004, and executed on August 11, 2004. Members of the San Francisco Police Department Narcotics Division, the Bureau of Narcotics Enforcement, and the Drug Enforcement Administration executed the searches, and found large scale marijuana grows in each location. Opposition, Ex. A at 8245. Based upon evidence seized at both properties, investigators obtained a warrant to search Cho's residence at 2218 Lenox Place in Santa Clara, California.

**1.   335 Jones Street, San Francisco, California**

San Francisco Police Inspector David Martinovich[1] submitted a six-page affidavit in support of the search warrant application setting forth the bases for searching 335 Jones Street and 1922 Lawton Avenue. *See* Cho Motion, Ex. A. The affidavit states that one of Martinovich's confidential informants ("CI") was told by a friend that the friend had walked by 335 Jones Street and smelled the strong odor of marijuana:

> CI told me that he/she recently spoke with a friend (unidentified) who told him/her about a building on Jones Street next to a Vietnamese restaurant. CI said that his/her friend has walked by this building many times and smelled the strong odor of marijuana (not marijuana smoke) emanating from the building. The friend told CI that he/she thought there was an indoor marijuana grow inside. CI told me that there is a "For Lease" sign on the door, but no telephone number to call to inquire about the property. CI said the sign has been on the door for months. CI said that building is on the West Side of Jones across the street from the park, between Eddy St., and Ellis St.

*Id.* at 8250. The affidavit does not state when the friend reportedly walked by 335 Jones Street and smelled the odor of marijuana.

Martinovich states that he and another officer examined the outside of 335 Jones Street, and made the following observations about the building:

> Both the glass door and a window were covered, making it impossible to see inside from the sidewalk. The iron-gate was chained and locked. There is a fan above the glass door. . . . We also noticed [from the vantage point of a neighboring roof] that there appeared to be a large and new (clean and shiny) vent/fan in the roof on the south side of the roof above the part of the building with the "For Lease" sign. . . . There is no rollup door in the front of the building that one might expect for a warehouse. There is no back door . . . where shipments of warehouse supplies might be unloaded. Several years ago the building housed a bar (The Black Rose) which went out of business. There is no loading zone in front of the building. There is no indication whatever that this building is being used or would be rented as a legitimate warehouse.

*Id.* at 8250-51.

Martinovich states that based upon his investigation of indoor marijuana cultivation operations, he has "learned that indoor marijuana cultivation requires that the light applied to the plants be strictly controlled. In order to maximize the indoor crop, all outside light is blocked out and the plants are given artificial light at controlled intervals to promote faster growth. As a result, it is common to find that the

---

[1] According to Martinovich's affidavit, he is a very experienced narcotics investigator with approximately 17 years experience in the Narcotics Bureau of the SFPD.

windows and skylights in buildings used as indoor grows have been covered to prevent natural light from ruining the crop." *Id.* at 8253. Martinovich also states that because of the strong odor of marijuana itself, "in every case that I have seen or investigated, a venting system is built into the location." *Id.*

Martinovich states that he served a search warrant on PG&E for current subscriber information for 335 Jones Street, along with billing records.[2] The records indicated that Minho Cho was the current subscriber, doing business as Tek Technology. *Id.* at 8251. According to the records, service began in March 2004, and the electric use for March was 11598 KH ($1,490.72); for April 13631 KH ($2,143.40); for May 15033 KH ($2,929.81); and for June 9888 KH ($1,915.81.). *Id.* Martinovich states he noticed that there was information for prior to March 2004, when Cho was not the subscriber, at the same address and with similar power usage, but that PG&E would not provide the subscriber information because it was beyond the scope of the warrant. *Id.*[3]

Martinovich also provides information about PG&E records for three warehouses in San Francisco located at 1177, 1141 and 1161 Quesada Avenue. *Id.* According to Martinovich, 1177 Quesada appears from the outside to be as large or larger than 335 Jones Street, and between February 2004 and May 2004 used between 1099 and 1278 KH per month. A search of 1177 Quesada revealed a "sophisticated indoor marijuana grow in which over 90 high intensity grow lamps were observed. . ." *Id.* The electric usage for 1161 Quesada was between 542 and 671 KH per month between February and May 2004, and was between 15.2 and 17.3 KH[4] for 1141 Quesada during the same time period. *Id.*

Martinovich states that based upon his experience investigating indoor marijuana cultivation operations, he knows that "indoor marijuana grows require high amounts of electricity to power the high intensity lights required to grow the marijuana. I know that the electric power usage will start low and

---

[2] As discussed *infra*, because the Court's review is limited to the four corners of Martinovich's affidavit, along with any documents attached to the affidavit, the Court does not consider the circumstances surrounding the issuance of the warrant for the PG&E records.

[3] Elsewhere in the affidavit Martinovich states that he obtained prior subscriber information for 335 Jones St. pursuant to another search warrant. In its second supplemental brief in opposition to defendant's motion, the government has submitted a copy of the August 4, 2004 search warrant that was served on PG&E for subscriber and billing records for 335 Jones Street and 1922 Lawton Avenue for the period January 2002 through March 2004.

[4] It is unclear if this is a typographical error.

3

1  increase over time then drop back down suddenly when the crop has been harvested." *Id.*

2  Finally, Martinovich states that he learned that there was no garbage service for 335 Jones Street,

3  and that there was no listed phone number either for that address or for Tek Technology. *Id.* at 8251-52.

**2.    1922 Lawton Avenue**

Martinovich's affidavit contains similar physical observations about 1922 Lawton Avenue. *See id.* at 8252 (noting covered windows, vent on building, iron gate). In addition, Martinovich states that when he was on scaffolding that was in the back yard of 1922 Lawton, he was able to smell the "strong and unmistakable odor of marijuana (not marijuana smoke) coming from the vent" of the building. *Id.*

Martinovich also states that through his investigation he learned from a property management company that 1922 Lawton Avenue was rented by Michael Su (a defendant in this case) beginning July 2002, and that on the rental application Su stated that he wanted the property for "import/export." *Id.* The management company also told Martinovich that in March or April 2004, Su contacted the company and said that he wanted to put the lease for 1922 Lawton Avenue into his partner's name or have the partner take over the lease; the partner was Minho Cho. *Id.*[5] The management company also told Martinovich that Su always paid his rent in money orders; according to Martinovich, the use of money orders is "a practice that is consistent with illegal enterprises and inconsistent with lawful businesses." *Id.*

Martinovich also obtained PG&E records for 1922 Lawton Ave. The records listed the type of business as "Electronic Ware Hse," and showed that the March 2004 bill was $92.00 for 666 KH, April 2004 was $562.00 for 2960 KH, May 2004 was $1,507.00 for 7734 KH, and June 2004 was $1,717.00 for 8862 KH. *Id.* at 8253.

---

[5] The original affidavit in support of the search warrant application simply states that the property manager told Martinovich that in March or April of 2004, Su contacted the property management company and said that he wanted to put the lease in his partner's name or have the partner take over the lease, and that the partner, Cho, faxed his credit report to the management company. *See* Cho Motion Ex. A at 8252. An undated Supplementary Report Narrative prepared by Martinovich sometime after the August 11, 2004 searches states that when he interviewed the property manager for 1922 Lawton, he "was also told that Michael Su had recently attempted to have his partner, Minho Cho put on the lease for 1922 Lawton but the owners refused." Cho Reply, Ex. A at 9128.

4

### 3.   2218 Lenox Place, Santa Clara, California

On August 18, 2004, after the searches of 335 Jones Street and 1922 Lawton Avenue, officers obtained and executed a search warrant for Cho's residence at 2218 Lenox Place, Santa Clara, California. Inspector Martinovich submitted an affidavit in support of the search warrant application which detailed the information described *supra* regarding the Jones Street and Lawton Avenue properties, as well as the result of the August 11, 2004 searches, and additional information specific to 2218 Lenox Place. *See generally* Opposition, Ex. A.

### DISCUSSION

**1.   Probable cause based on information provided by the confidential informant's friend**

Cho contends that there was no probable cause to search 335 Jones Street, and that because the same search warrant affidavit supported the searches of 335 Jones Street and 1922 Lawton Avenue, evidence from both searches must be suppressed.[6] Cho contends that there is nothing in the affidavit establishing the reliability of CI's friend, nor is there information in the affidavit about when the friend reportedly smelled the strong odor of marijuana emanating from 335 Jones Street.[7] Cho also contends that presumably when Martinovich surveilled 335 Jones St., he did not smell marijuana because he did not include any such corroborating information in the affidavit, and thus this fact impeaches the friend's information that he/she smelled the "strong odor" of marijuana on numerous occasions.

The government responds that the information provided by the CI's friend was only one piece of information, among many, that supplied probable cause to search 335 Jones Street, and that the Court must examine the totality of the circumstances. While this is true, the Court must nevertheless

---

[6]   Defendant challenges the search of 1922 Lawton Avenue based on the fact that the same affidavit supported the search warrant application for both properties. Defendant also contends that the Martinovich's observations about both buildings, as well as the similar electrical usage patterns, cannot form the basis for probable cause. Accordingly, the Court's analysis of whether there was probable cause for 335 Jones Street also applies to 1922 Lawton Avenue. Moreover, there was additional probable cause for 1922 Lawton Avenue because Martinovich stated that he smelled the odor of marijuana outside that property.

[7]   The affidavit only states that the CI "recently" *spoke* with his/her friend; the affidavit does not state that the friend recently smelled the marijuana.

5

determine whether the information provided by the CI's friend could form a basis, as part of the totality of the circumstances, for the probable cause finding. The government contends that Martinovich was able to personally verify certain factual details relayed to him by the CI, a portion of which was provided by the friend.[8] For example, the government emphasizes the fact that Martinovich corroborated that 335 Jones Street was located next to a Vietnamese restaurant, and he also verified the CI's information that the building was located between Eddy and Ellis Street and that the building contained a "For Lease" sign on its door.

The Court concludes that there is nothing in Martinovich's affidavit to establish the reliability of the information provided by the CI's friend, and this information cannot provide probable cause for the search warrant. The Court finds instructive *Illinois v. Gates*, 462 U.S 213 (1983), in which the Supreme Court addressed the circumstances under which an anonymous tip could supply probable cause for a search warrant. In *Gates*, the police received an anonymous letter stating that an Illinois couple was involved in drug trafficking, and provided specific details about an upcoming trip the couple was taking to Florida to obtain drugs; the letter stated that on a certain date the wife would drive to Florida and the car would be loaded with drugs, that her husband would fly down to Florida and meet her, and that they would drive to Illinois together. Investigators corroborated a number of specific details, including the facts that the husband flew by himself to Florida, went to a motel and checked in to a room registered to his wife, that the next day the man and an unidentified woman, who was presumably his wife, drove in a car with Illinois plates and registered to the husband, northbound on a freeway used by travelers driving to Illinois. *Id*. at 226-27.

The *Gates* Court reversed the Illinois Supreme Court and held that there was probable cause to support a search warrant issued for the Gates' house and car. Applying a totality of the circumstances analysis, the Court held that even without consideration of the anonymous letter, the facts obtained by the state and federal investigation at least suggested that the Gates were involved in illegal drug trafficking. *Id*. at 243. With regard to the anonymous letter, the Court held,

---

[8] It is unclear from both the affidavit and the government's papers which details came from the CI and which came from the friend, except it is clear that the CI's friend was the person who reportedly smelled marijuana.

> [T]he magistrate could rely on the anonymous letter, which had been corroborated in major part by Mader's efforts – just as had occurred in *Draper*. The Supreme Court of Illinois reasoned that *Draper* involved an informant who had given reliable information on previous occasions, while the honesty and reliability of the anonymous informant in this case were unknown to the Bloomingdale police. While this distinction might be an apt one at the time the police department received the anonymous letter, it became far less significant after Mader's independent investigative work occurred. The corroboration of the letter's predictions that the Gates' car would be in Florida, that Lance Gates would fly to Florida in the next day or so, and that he would drive the car north toward Bloomingdale all indicated, albeit not with certainty, that the informant's other assertions also were true. . . . It is enough, for purposes of assessing probable cause, that "corroboration through other sources of information reduced the chances of a reckless or prevaricating tale," thus providing "a substantial basis for crediting the hearsay." *Jones v. United States*, *supra*, 362 U.S., at 269, 271, 80 S.Ct., at 735, 736. . .
>
> [T]he anonymous letter contained a range of details relating not just to easily obtained facts and conditions existing at the time of the tip, but to future actions of third parties ordinarily not easily predicted. The letter writer's accurate information as to the travel plans of each of the Gates was of a character likely obtained only from the Gates themselves, or from someone familiar with their not entirely ordinary travel plans. If the informant had access to accurate information of this type a magistrate could properly conclude that it was not unlikely that he also had access to reliable information of the Gates' alleged illegal activities.

*Id.* at 243-45.

Here, there is no information provided about the reliability of CI's friend, and thus, as in *Gates*, the judge could rely on the tip only if it was sufficiently corroborated. The most salient aspect of the tip – that the strong odor of marijuana could be smelled from outside 335 Jones Street – was presumably not corroborated by Martinovich when he surveilled the building because no such information was included in Martinovich's affidavit. The other information provided either by the CI or his/her friend – the building's location and proximity to a Vietnamese restaurant, and the "For Lease" sign on the front – are "easily obtained facts and conditions existing at the time of the tip." Accordingly, the Court concludes that the judge could not rely on the information provided by the CI's friend. As a result, the Court must determine whether the remaining information contained in the affidavit supplied probable cause to search 335 Jones Street.

**2.      Probable cause based on the remaining information in the affidavit**

The government contends that there was probable cause to search 335 Jones Street based upon (1) Martinovich's observations of the building, including the facts that the glass door and windows were

7

covered, the iron gate was chained and locked, the building had vents, there was no roll up door, no loading zone, and no back door; (2) the information about electric usage at the building; (3) the fact that there was no garbage service for 335 Jones St., and there was no listed telephone number for that address or for the listed business, Tek Technologies; and (4) Cho's connection to 1922 Lawton Avenue, where Martinovich smelled the odor of marijuana, and the similarities between 335 Jones Street and 1922 Lawton Avenue.

For a search warrant to be valid, the district court must find that the warrant is supported by an affidavit establishing probable cause for the search. Probable cause is defined as "a fair probability that contraband or evidence of a crime will be found." *Gates*, 462 U.S. at 238; *see also United States v. Flores*, 679 F.2d 173, 175 (9th Cir. 1982). In assessing the validity of a search warrant, the district court is limited to the information and circumstances contained within the four corners of the underlying affidavit and any reports or documents accompanying the affidavit. *See United States v. Taylor*, 716 F.2d 701, 705 (9th Cir. 1983).[9] Specifically, the affidavit need only enable the magistrate to conclude that it would be reasonable to seek the evidence in the place indicated by the affidavit. *See id*. A magistrate judge's issuance of a warrant is reviewed for "clear error," and the warrant should be upheld as long as the affidavit provided a substantial basis for the magistrate to conclude probable cause existed based on the totality of the circumstances. *See United States v. Leon*, 468 U.S. 897, 915 (1984); *see also United States v. Pitts*, 6 F.3d 1366, 1369 (9th Cir. 1993) (holding warrant is valid so long as a reasonable nexus existed between the activities supporting probable cause and the locations to be searched).

Although it is a close call, the Court finds that, even without consideration of the information provided by the CI's friend, the information provided about 335 Jones Street is sufficient to create probable cause. The Court agrees with defendant that Martinovich's affidavit does not explain the significance, if any, of numerous observations about the building, such as the fact that there was no roll up door, no loading zone, and no back door. Although covering windows and venting buildings are actions consistent with indoor marijuana cultivation, they are also consistent with a lawful use of the

---

[9] For this reason, the Court does not consider the circumstances surrounding the issuance of the warrant for the PG&G records.

8

premises.

However, the PG&E records, the comparison of those records to other commercial warehouses, and Martinovich's statements regarding the pattern of electrical usage for indoor marijuana cultivation, provide a more substantial basis for believing that 335 Jones Street was being used as a marijuana grow site. In addition, Martinovich's affidavit states that there was no garbage service or phone number for 335 Jones Street, despite the fact that the PG&E records showed that a business was operating in the building. Finally, the affidavit also linked Cho with 1922 Lawton Avenue, for which there was probable cause because, *inter alia*, Martinovich stated he smelled the strong odor of marijuana plants emanating from a vent at 1922 Lawton. The fact that Su attempted to transfer the lease at 1922 Lawton to Cho, combined with the facts that Martinovich smelled marijuana at 1922 Lawton, and that 1922 Lawton Avenue and 335 Jones Street had similar electrical usage patterns, suggest that Cho was using 335 Jones Street as an indoor marijuana grow site. Under the totality of the circumstances, the Court concludes that the affidavit contained sufficient facts to support the judge's finding that there was a "fair probability" that 335 Jones Street contained evidence of marijuana cultivation and distribution. *See United States v. Gourde*, 440 F.3d 1065, 1069 (9th Cir. 2006) (en banc) (applying totality of circumstances analysis to uphold warrant and emphasizing "deferential approach" of reviewing courts).

Accordingly, the Court finds that there was probable cause to support the searches of 335 Jones Street and 1922 Lawton Avenue, and DENIES defendant's motion to suppress evidence seized from those searches. Because these searches did not violate the Fourth Amendment, the Court DENIES defendant's motion to suppress evidence seized from 2218 Lenox Place.[10]

///

---

[10] In light of the disposition of this motion, the Court does not address the arguments raised in defendant's Ly's joinder regarding whether Ly has standing to challenge the search of 335 Jones Street.

9

**CONCLUSION**

For the foregoing reasons, the Court hereby DENIES defendant Cho's motion to suppress. (Docket Nos. 484, 584).

**IT IS SO ORDERED.**

Dated: December 22, 2006

SUSAN ILLSTON
United States District Judge