United States District Court

For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 05-375 SI |
| Plaintiff, | **ORDER DENYING DEFENDANT LY'S MOTION TO SUPPRESS** |
| v. | |
| BRIAN HENG LUN LY, et al., | |
| Defendants. | |

On February 2, 2007, the Court heard argument on defendant Ly's motion to suppress evidence seized from 1951 Quint Street, San Francisco, California. For the reasons set forth below, the Court DENIES the motion.

**BACKGROUND**

On June 22, 2005, pursuant to a federal search warrant issued by Magistrate Judge James, officers searched defendant Brian Ly's residence at 1951 Quint Street, San Francisco, California. Officers seized, *inter alia*, a bag of suspected marijuana, a "medical marijuana document," bank records, cell phones, a computer hard drive and two laptop computers, a taser, swords, a baton, and a rifle. *See* Def's Motion Ex. A at 2.

The search warrant application was supported by an affidavit authored by Drug Enforcement Administration Special Agent Christopher Fay. Fay's affidavit is labeled a "master affidavit" because it was written in support of search warrants for twelve separate locations.[1] Fay's affidavit states that Ly

---

[1] Judge James issued search warrants for the other locations. The Court has denied motions to suppress filed by Ly's co-defendants challenging the searches of some of these other locations.

and eighteen other individuals, including Enrique Chan and Darrick Hom (Ly's roommate), had been indicted for conspiring to cultivate, possess with intent to distribute, and to distribute 1,000 or more marijuana plants between January 2001 and approximately June 16, 2005. *See* Fay Affidavit at ¶¶ 15, 152 (attached as exhibit to Def's motion). Fay's affidavit summarized evidence gained from prior search warrants (*id.* at ¶ 24(a)-(j)); from two confidential sources (*id.* at ¶¶ 25-26); and from a Court-authorized wiretap of a cellular telephone belonging to co-defendant Chan, including contacts with an undercover agent and a financial investigation (*id.* at ¶¶ 30-81).

The affidavit contains the following information related to Ly. Fay states that on August 11, 2004, a state search warrant was executed at 1922 Lawton Street, San Francisco, California.[2] *Id.* ¶ 24(e). Officers found and seized 646 growing marijuana plants and miscellaneous mail addressed to Michael Say Su. *Id.* Su was arrested on August 20, 2004 at his residence. *Id.* At the time of Su's arrest, officers seized pieces of paper bearing the names "Vince," "Enrique C.," "Eddy P.," "Darrick H.," "Brian L.," and "Minho Cho." *Id.*[3] Fay states, "[b]ased on my knowledge of the facts and circumstances of this investigation, I believe these names refer to Vince Ming WAN, Enrique CHAN, Edward Wook Sung PARK, Brian Heng Lun LY, and Minho Thomas CHO, respectively." *Id.*

Fay's affidavit also states that on December 1, 2004, a state search warrant was executed at 922 Capitol Avenue in San Francisco where an indoor marijuana cultivation and processing operation was located. *Id.* ¶ 24(h). Ly, Chan, Park and indicted co-conspirators Asa Barnla and David Lee were arrested at the scene. *Id.* at ¶¶ 15, 24(h). At the time of his arrest, Ly had a cellular phone in his possession. *Id.* ¶ 24(h). Officers searched Ly's phone and discovered that his phone had Chan's number stored in it (Chan's number was the target telephone for the wiretap).[4] Ly notes that Fay's affidavit fails to mention the fact that Ly was subsequently released and no state or federal charges were filed against

---

[2] The Court denied a motion to suppress the search of 1922 Lawton Street.

[3] Ly's reply states that the government recently advised that the piece of paper containing "Brian L." was "presumably from an address book," bearing the notation "Brian L." and three phone numbers. *See* Def's Reply at 2 n.2.

[4] Ly has separately moved to suppress the search of the cell phone. As discussed *infra*, the Court need not rule on the cell phone motion in order to resolve the instant motion. The Court will issue a separate order on the cell phone search.

2

him in connection with 922 Capitol Avenue.

Fay also states that Ly, Chan, Hom and Su were four of thirty-nine named interceptees in Judge Patel's May 24, 2005 order authorizing continued interception of wire communications over Chan's cell phone. *Id.* ¶ 30. Fay states that based in part on intercepted calls and confidential source information, he believed that Chan coordinated the operation of numerous marijuana grow site maintenance crews, and that Ly was a marijuana grow site maintenance crew member. *Id.* ¶ 31. Fay does not specifically state the basis for his statement that Ly was a crew member. As Ly correctly notes, none of the confidential source information described in the affidavit specifically pertains to Ly. Instead, the confidential source information relates to Ly's co-defendants. For example, one confidential source identified Chan, Park and Barnla as individuals involved in indoor marijuana cultivation. *See id.* at ¶¶ 25(a), 87.

Fay describes two intercepted telephone calls that relate to Ly. In the first call on April 26, 2005, Chan and co-defendant Hac were intercepted over Chan's cell phone. *Id.* ¶ 32. The affidavit states,

> HAC asked CHAN, "Did you get a chance to do that thing?" He added, "the thing we talked about last night?" CHAN replied, "Oh, the paperwork, right?" HAC said, "Yeah." CHAN stated, "Yeah, I've got it. Can I get it to you tomorrow?" HAC said, "Yeah, I guess." CHAN said, "You know what? Or what I'm gonna do, I'm just gonna give it to 'B' and have him give it to everybody." CHAN further explained that, that way, "I don't have to drive around and meet everybody."

*Id.* Fay states that he believed Chan's use of the term "paperwork" referred to money, and that by giving the "paperwork" to "B" for disbursement to "everybody," Chan could avoid driving around town with large amounts of cash. *Id.* ¶ 32(a). Fay states that he knew "B" was nickname for Ly based on "previously seized telephone directories and confidential source information." *Id.* Fay also states that "[a]ccording to ICE Special Agent Lee Brown, CHAN has used the term 'paperwork' in conversation, in the context that indicates a reference to money." *Id.*

The second intercepted phone call occurred on April 29, 2005. Fay's affidavit states that on April 29 and 30, 2005, several calls were intercepted over Chan's cell phone wherein Chan discussed with Lee and Hom a plan to "commit serious bodily injury upon, or possibly even to murder" co-defendant Barnla because Chan believed Barnla stole thirty to forty pounds of marijuana from a grow site. *Id.* ¶¶ 39-46. On April 29, Ly was intercepted in a call talking with Chan and Hom about the

3

planned assault. *Id.* ¶ 42. Fay's affidavit states,

> HOM told CHAN, "Hey, uh. I'm talking to 'B' right now and I understand what he's saying. He has no part in this and he doesn't want to do it over here. Hold on, okay." Brian Hen Lun LY came on the phone and said, "Hey, I don't think it's a good idea, man. I mean, dude, if something goes bad, you know what I'm saying, I have other stuff, too." LY added, "Everything's gonna fall on my shoulders." CHAN stated, "I wasn't gonna do everything there. I was just gonna throw him in the car afterwards." CHAN and LY continued discussing LY's reservations about being involved in CHAN's plan. CHAN asked to speak to "D" again, and HOM came back on the phone. CHAN stated, "Okay, why don't we do this then. Why don't we just meet up somewhere and then stun him in the car." HOM stated, "Okay, all right." CHAN stated, "Throw him in the car and keep stunning him." HOM agreed and stated that he didn't want to say any more about it on the phone.

*Id.* Fay states that he believed "LY, a/k/a/ 'B,' was attempting to tell CHAN and HOM, a/k/a 'D,' that he was nervous about participating in CHAN's plan to assault BARNLA." *Id.* ¶ 42(a). Fay also states that "[b]ased on my training and experience, I believe LY's stated concern about not wanting to 'do it' at his place because he had 'other stuff' may indicate the presence of evidence of criminal activity at LY's residence." *Id.* ¶ 151.

## DISCUSSION

### I.   Probable cause

Ly contends that Fay's affidavit did not establish probable cause to search 1951 Quint Street because the information pertaining to him is limited and based upon unfounded assumptions. Specifically, Ly contends that (1) the "piece of paper" with the notation "Brian L." found at Su's residence only establishes a connection between Su and Ly, not that Ly was involved in any illicit activities; (2) Ly's arrest on December 1, 2004 outside 922 Capitol Avenue, which occurred over six months prior to the execution of the search warrant at issue and for which no charges were filed, is stale and not probative of the probable cause determination; (3) the search of Ly's cell phone incident to the December 1, 2004 arrest was illegal, and even if the Court does not suppress that search, that search only establishes that Ly had Chan's cell phone number programmed in his phone, not that Ly was involved in illicit activity; (4) Fay draws several unreasonable and unfounded inferences from the April 26, 2005 intercepted telephone conversation regarding "B" and "paperwork"; and (5) the April 29, 2005 intercepted telephone conversation shows that Ly had nothing to do with the plan to confront Barnla,

4

and again Fay draws unreasonable and unfounded inferences from that conversation regarding Ly's reference to "other stuff." Ly also emphasizes that none of the confidential source information presented in the affidavit specifically pertains to him.

The issuance of a search warrant is reviewed for clear error. *See United States v. Baldwin*, 987 F.2d 1432, 1435 (9th Cir.), *cert. denied*, 508 U.S. 967 (1993). This Court must determine whether there was a "substantial basis" for concluding that the warrant was supported by probable cause. *See United States v. Brown*, 951 F.2d 999, 1002 (9th Cir. 1991). The judge making the original determination of probable cause is accorded significant deference by the reviewing court. *See United States v. Gourde*, 440 F.3d 1065, 1069 (9th Cir. 2006) (en banc) (applying totality of circumstances analysis to uphold warrant and emphasizing "deferential approach" of reviewing courts). Probable cause is defined as "a fair probability that contraband or evidence of a crime will be found." *Illinois v. Gates*, 462 U.S. 213, 238; *see also United States v. Flores*, 679 F.2d 173, 175 (9th Cir. 1982). In assessing the validity of a search warrant, the district court is limited to the information and circumstances contained within the four corners of the underlying affidavit and any reports or documents accompanying the affidavit. *See United States v. Taylor*, 716 F.2d 701, 705 (9th Cir. 1983).

Under the totality of the circumstances, the Court concludes that the affidavit contained sufficient facts to support the judge's probable cause finding. The affidavit stated that in June 2005, Ly and others had been indicted for their participation in an alleged marijuana cultivation conspiracy that spanned four years, and that in December 2004 – during the time period of the alleged conspiracy – Ly was arrested along with co-defendants Chan, Park, Barnla and Lee outside of 922 Capitol Avenue, a suspected marijuana grow site. The Court finds that Ly's arrest at 922 Capitol Avenue is not too stale to provide probable cause. Where evidence is sought of a necessarily long-term criminal business, such as marijuana growing, greater lapses of time are permitted if the evidence in the affidavit shows the probable existence of the activity at an earlier time. *See United States v. Greany*, 929 F.2d 523, 525 (9th Cir. 1991) (two year old information regarding marijuana cultivation not stale); *see also United States v. Dozier*, 844 F.2d 701, 707 (9th Cir. 1988) (five and a half month old information not stale in ongoing marijuana cultivation case).

Ly's connections to Su, Hom, Chan, Park, Barnla and Lee provide further support for the judge's

5

probable cause finding.[5] Although Ly's connections to those individuals could be interpreted innocently, in the context of all of the information contained in Fay's affidavit, Ly's link to these individuals can also be interpreted as creating a fair probability that Ly was involved in marijuana cultivation. *See United States v. Hoyos*, 892 F.2d 1387, 1393 (9th Cir. 1987) ("In determining the existence of probable cause we must look to the totality of the circumstances. The fact that some of these acts, if reviewed separately, might be consistent with innocence is immaterial."), *overruled on other grounds*, *United States v. Ruiz*, 257 F.3d 1030 (9th Cir. 2001) (en banc). Fay's affidavit states that a confidential source identified Chan, Park and Barnla as individuals involved in indoor marijuana cultivation. *See* Fay Affidavit at ¶¶ 25(a), 87. Su was connected to 1922 Lawton Street, a marijuana grow site, and officers found pieces of paper bearing not only the name "Brian L.", but also the names "Enrique C.," "Darrick H.," "Vince," "Eddy P.," and "Minho Cho." Fay stated that based on his knowledge of the investigation, he believed the names on the seized papers referred to Ly, Chan, Wan, Park and Cho, all of whom (with the exception of Wan) were charged with conspiring with Ly and others in Count One of the indictment. *See* Fay Aff. ¶¶ 15, 24(e).

The Court further finds that the issuing judge was entitled to rely on the officers' interpretation of the intercepted phone calls, which further implicate Ly in the marijuana conspiracy. *See United States v. Gil*, 58 F.3d 1414, 1418 (9th Cir. 1995). Fay states that based upon his own training and experience, as well as that of ICE Special Agent Lee Brown, he interpreted the April 26, 2005 intercepted phone call between Chan and Hac to mean that Chan planned to give money – "paperwork" – to Ly ("B"). Fay Aff. ¶ 32(a). Ly asserts that there is nothing to support Fay's assumption that Ly is in fact "B." However, the second intercepted phone call on April 29, 2005 was between Chan and Hom, Ly's roommate, on Hom's telephone. *Id.* ¶ 41(a). During that phone call, Hom told Chan that he was "talking to 'B' right now," and then "B" got on the phone and spoke with Chan about his apprehension over the plan to "do it [harm Barnla] over here." *Id.* ¶ 42. Thus, Fay's belief that Ly is "B" is supported by the April 29,

---

[5] For purposes of this motion, the Court need not rule on the legality of the search of Ly's cell phone because even without the information that Ly had Chan's phone number programmed in his cell phone, there is still a connection between Ly and Chan based on the arrest at 922 Capitol Avenue and the intercepted phone calls.

6

2006 phone call. The fact that "B" stated in that phone call that he did not want to be part of Chan's plan does not, as defendant suggests, necessarily detract from probable cause. Instead, it shows that "B" had contacts with Hom and Chan and was aware of the plan to harm Barnla because of Barnla's suspected theft of marijuana.

## II.     Nexus to search residence

Defendant contends that even if Fay's affidavit established that Ly was involved in criminal activity, there was no probable cause to search Ly's residence because the affidavit did not link criminal activity to 1951 Quint Street. However, Fay states in his affidavit that based on his training and experience, he knew that "conspirators in drug trafficking frequently keep records of their transactions" and drug traffickers typically maintain such records at locations, such as their residences or at properties leased or owned by drug traffickers. Fay Aff. at ¶ 170. Courts have frequently recognized that "in narcotics cases, evidence is likely to be found where the dealers live." *United States v. Chavez-Miranda*, 306 F.3d 973, 978 (9th Cir. 2002). The fact that defendant allegedly worked as a "marijuana grow site maintenance crew member" and was not the leader does not negate the possibility that defendant would have evidence at his residence. "When the traffickers consist of a ringleader and assistants, a fair probability exists that drugs will be present at the assistants' residence as well as the ringleader's." *United States v. Angulo-Lopez*, 791 F.2d 1394, 1399 (9th Cir. 1986).

Moreover, the issuing judge was permitted to rely on Fay's interpretation of the April 29, 2005 intercepted call in which "B" told Chan that he didn't want Chan and Hom to "do it over here" because "if something goes bad, you know what I'm saying, I have other stuff, too." Fay Aff. ¶ 42. Fay states in his affidavit, "[b]ased on my training and experience, I believe LY's stated concern about not wanting to 'do it' at his place because he had 'other stuff' may indicate the presence of criminal activity at LY's residence." *Id.* ¶ 151. Again, the issuing judge was entitled to rely on Fay's interpretation of the intercepted conversation to find that there was a "fair probability" that evidence would be found at Ly's residence. *See Gil*, 58 F.3d at 1418; *see also United States v. Fannin*, 817 F.2d 1379, 1382 (9th Cir. 1987) ("The magistrate 'need not determine that the evidence sought is in fact on the premises to be searched . . . or that the evidence is more likely than not to be found where the search takes place. . . .

7

The magistrate need only conclude that it would be reasonable to seek the evidence in the place indicated in the affidavit.'" (citation omitted)).

### III.    *Leon* good faith exception

Alternatively, the Court holds that even if Fay's affidavit failed to establish probable cause, the evidence from the search is admissible under *United States v. Leon*, 468 U.S. 891 (1984). *Leon* holds that, "[i]n the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *Id.* at 926. Here, defendant does not challenge the magistrate judge's impartiality. Instead, defendant contends that the probable cause showing was so meager that it rendered the officers' reliance on the warrant objectively unreasonable. The Court disagrees for the reasons set forth *supra*, and finds that the officers' reliance on the magistrate's determination of probable cause was objectively reasonable. *See Leon*, 468 U.S. at 926 (officers' reliance objectively reasonable where reasonable minds could differ as to existence of probable cause).

### CONCLUSION

For the foregoing reasons, the Court hereby DENIES defendant's motion to suppress. (Docket No. 588).

**IT IS SO ORDERED.**

Dated: February 5, 2007

SUSAN ILLSTON
United States District Judge